Filed 11/9/22  In re A.D. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.D., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DIANA D., <br><br> Defendant and Appellant. | F084021 <br><br> (Super. Ct. No. 20JP-00092A) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Donald J. Proietti, Judge.

Caitlin Christian, under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Jennifer Tran, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Levy, J. and Franson, J.

Appellant, Diana D. (mother), is the mother of the five-year-old child, A.D. (the child), who is the subject of this dependency case. Mother challenges the juvenile court's orders terminating her parental rights at a Welfare and Institutions Code[1] section 366.26 hearing. Mother's sole claim is that the juvenile court and the Merced County Human Services Agency (agency) failed to comply with their duty to inquire under the Indian Child Welfare Act (ICWA). We agree and conditionally reverse.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In August 2020, the child was taken into protective custody as a result of mother's substance abuse, unstable housing, and general neglect of the child. The child's maternal grandmother had also reported to law enforcement that she suspected sexual abuse by mother's boyfriend. The agency filed a petition alleging the child was described by section 300, subdivisions (b)(1) and (g). During the agency's initial inquiry, mother gave the agency no reason to believe the child was or may be an Indian child. When mother was asked if she had any Indian ancestry by an agency social worker, she responded, "ugh, [n]o."

At the detention hearing held on August 5, 2020, mother appeared by video and was appointed counsel. The juvenile court directly inquired of mother regarding possible Indian ancestry in her family, and mother stated, "I don't know. My grandpa … is Native American." Mother then clarified that she would have to "look it up" to determine if her paternal grandfather had "some American Indian blood in him." Mother did not know the name of the tribe that her paternal grandfather could be a member of, and she claimed she could ask her father for that information.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

The juvenile court informed mother that it was important for her to ask her family members for information and work with the agency to provide the information to the tribe. Mother denied that the child's alleged father, R.G. (father), had Indian ancestry. The juvenile court reserved its ICWA finding and requested that the agency's ICWA specialist meet with mother to fill out the appropriate paperwork. The juvenile court ordered the child detained from the physical custody of the parents and set a combined jurisdiction and disposition hearing for September 16, 2020.

On August 10, 2020, mother's signed Parental Notification of Indian Status form (ICWA-020 form) was filed, which indicated she may have Indian ancestry with an unknown tribe. The agency sent formal notice pursuant to ICWA to the Bureau of Indian Affairs (BIA) and Pueblo of Isleta tribe on August 13, 2020. The notice included a declaration signed under penalty of perjury by a legal clerk for the agency stating the agency provided all information it had about the relatives of the child. The family information in the notice included the names of the child's mother, maternal grandmother, maternal grandfather, and maternal great-grandfather. An address was provided for both maternal grandparents, but the notice did not contain a date of birth for the child's maternal grandfather.

The agency's jurisdiction and disposition report, filed on September 15, 2020, recommended that the juvenile court find the allegations in the petition true and order that the child remain in out-of-home care with family reunification services provided to mother. It was not recommended father be provided reunification services based upon his status as an alleged father. The child was placed in a resource family home, meanwhile the agency was having difficulty contacting mother to prepare its report.

The ICWA status section of the report detailed mother's initial denial of Indian ancestry along with the agency's service of formal notice on the BIA and Pueblo of Isleta tribe. A maternal great-aunt was identified as a potential placement option for the child, and she was going through the resource family approval process. At the jurisdiction and

3.

disposition hearing held on October 5, 2020, the juvenile court found the allegations in the petition true, ordered reunification services to mother, and set a six-month review hearing for March 10, 2021.

The agency submitted a Declaration in Support of ICWA Status on December 3, 2020, which detailed the receipt and response of the Pueblo of Isleta tribe to the information contained in the formal notice. A document attached to the declaration indicated that an ICWA finding was needed for mother, but no inquiry was completed for father because his whereabouts were unknown. Mother was documented as claiming "Tiwa" ancestry, but there was no "Tiwa" tribe. The Pueblo of Isleta tribe was listed as having a tribal affiliation with "Tigua," and the "Tigua" tribe was associated with "Tiwa." A letter from the Pueblo of Isleta tribe, dated October 28, 2020, stated that the child was not a member of the tribe based upon the information provided to it by the agency. In a separate letter, the tribe also explained that the child was ineligible for membership because she did not meet the one-quarter blood standard for membership in the tribe.

The six-month status review report, prepared by the agency for the hearing on March 17, 2021, recommended that family reunification services be continued for mother and ICWA be found not applicable. The child was now placed with a maternal great-aunt since October 8, 2020. The ICWA status section of the report indicated that ICWA did not apply based on mother's claim of Indian ancestry, and it referenced the declaration submitted in December 2020. Mother was in contact with the agency and participating in substance abuse treatment at an inpatient program. At the six-month review hearing, mother was present and represented by counsel. The juvenile court found ICWA was not applicable, continued family reunification services for mother, and set a 12-month review hearing for September 1, 2021.

A few days prior to the child's fourth birthday in May 2021, the agency filed a supplemental petition to remove the child from her relative care provider. The maternal

4.

great-aunt requested that the child be removed after she continued to disagree with the agency's concerns regarding her inconsistent reports of the child's allegedly difficult behavior and attempts to interfere with family reunification. The supplemental petition was sustained by the juvenile court on June 1, 2021, and the child's new care provider claimed the child was doing "remarkably well" in her new home.

The agency's report for the 12-month review hearing recommended that mother's family reunification services be terminated and a section 366.26 hearing be set. The ICWA status section of the report made note of the finding from the previous review hearing that ICWA was not applicable without any new information provided. Mother failed to complete the requirements of her case plan, and father's whereabouts remained unknown. At a contested 12-month review hearing held on September 15, 2021, mother failed to appear. The juvenile court proceeded to terminate mother's family reunification services and set a section 366.26 hearing for February 28, 2022.

The agency's section 366.26 report, filed on January 12, 2022, recommended that parental rights of mother and father be terminated and a plan of adoption be selected. The child remained in the same resource family home since May 2021. The report indicated that ICWA did not apply with no new information provided. Mother failed to appear for the contested section 366.26 hearing held on February 15, 2022. The juvenile court found the child adoptable, and it terminated the parental rights of mother and father. On March 2, 2022, mother filed a timely notice of appeal.

## DISCUSSION

Mother contends the juvenile court's finding that ICWA did not apply was not supported by substantial evidence because the agency failed to comply with its duty of initial inquiry. Mother argues the record is insufficient to support the juvenile court's ICWA finding because it does not include interviews conducted by the agency with mother and maternal family members regarding her claim of Indian ancestry.

5.

### A. *Legal Principles*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911, subd. (c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224.2, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the agency and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child …." (Cal. Rules of Court, rule 5.481(a); see also § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance

6.

of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the agency or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or agency "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id.*, subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the agency "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting BIA, the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the court or agency has "reason to know" the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)−(6).)

If the juvenile court "makes a finding that proper and adequate further inquiry and due diligence … have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding" that ICWA does not apply, subject to reversal if the court "subsequently receives information providing reason to believe the child is an Indian child." If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

Social workers have no duty under federal law to ask extended family members about possible tribal membership. (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The error, if any, is an error of state law. (*Ibid*.) The test for prejudicial state law error is whether, after an examination of the entire cause, including the evidence, we are of the opinion that "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## B.     *Standard of Review*

Where, as here, the juvenile court finds ICWA does not apply to a child, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) We review the juvenile court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the juvenile court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.) The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders." (*Ibid*.)

## C.    Analysis

### Adequacy of Initial Inquiry

In the present case, mother informed the agency that she had "Tiwa" ancestry through her paternal grandfather (child's maternal great-grandfather). The agency provided formal notice to a federally recognized tribe, Pueblo of Isleta, that the agency reported as being affiliated with the "Tiwa" tribe. The tribe indicated that the child was neither a member nor eligible for membership in the tribe based upon the information provided by the agency. The information provided to the tribe included the names of the child's maternal grandparents and great-grandfather.

First, there is evidence that the child's maternal grandfather, the son of the individual identified as "Native American" by mother, was available for the agency to interview. The information in the notice contained the maternal grandfather's name and address, however, there is no documentation that he was interviewed by the agency regarding mother's claimed Indian ancestry. Mother specifically stated that she would need to ask the maternal grandfather about the great-grandfather's Indian ancestry, which suggests he had such information. The child's maternal great-aunt was available to the agency as she had placement of the child during the dependency case, but a great-aunt is not included among the relatives that an agency must interview to fulfill its duty of inquiry. (See 25 U.S.C. § 1903(2) [" 'extended family member' " includes the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent"]; § 224.1, subd. (c) [" 'extended family member' " is "defined as provided in [s]ection 1903 of the federal Indian Child Welfare Act"].) There was also no suggestion that she was related to mother's paternal family such that she would have had any information necessary for further inquiry.

We agree that the agency was required to interview the child's maternal grandfather, who was the son of the claimed source of the child's possible Indian ancestry. The agency's reports and declaration do not expressly indicate that the family's

9.

Indian ancestry was discussed with the maternal grandfather. In some cases, an agency's failure to document every interview of a relative as part of its further inquiry would be insufficient to invalidate a juvenile court's ICWA finding on its own. (See, e.g., *In re Gerardo A.* (2004) 119 Cal.App.4th 988, 995 [a silent record regarding interviews of additional family members regarding Indian ancestry did not render the ICWA inquiry inadequate].) However, we are unable to infer that the maternal grandfather was interviewed by the agency, in part because the notice to the tribe omitted his date of birth.

We reject the agency's contention that the information contained in its notice demonstrates inquiry was conducted of each family member with information listed therein. The notice merely indicates that biological relative information was listed without identifying the source of the information. We can only conclude that the information was obtained as a result of the juvenile court's direction for the agency's ICWA "specialist" to meet with mother to obtain the information that she gathered from her family regarding her initial claim of unknown Indian ancestry. Although it appears that mother complied with the juvenile court's request that she speak with the maternal grandfather about her Indian ancestry to identify a tribe, there is no evidence demonstrating that the agency directly inquired of the maternal grandfather.

The juvenile court, at a minimum, should have ensured that the agency attempted to contact the child's maternal grandfather regarding mother's possible Indian ancestry. The maternal grandfather was readily available to the agency for contact given their possession of his address. The agency should have made a meaningful effort to contact the maternal grandfather and attempted to gather the necessary information to assist them in determining whether there was a reason to know the child was an Indian child. Therefore, we conclude the agency failed in its duty of initial inquiry and will consider whether that error was prejudicial.

However, we reject mother's claim that a required further inquiry was inadequate because there was no "reason to believe" the child might be an Indian child. The only

tribe mother ever claimed to have potential Indian ancestry from was a non-federally recognized tribe identified as "Tiwa." (See 87 Fed. Reg. 4636–4641 (Jan. 28, 2022); see also 25 U.S.C. § 5131 [requiring the Department of the Interior to publish a list of federally recognized tribes in the Federal Register every year].) ICWA imposes no duty on the agency to investigate ancestry related to a non-federally recognized tribe. (See *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338, citing 25 U.S.C. § 1903(8) [" 'Indian tribe' is defined so as to include only federally recognized Indian tribes"]; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1009 ["an Indian child is one with a tribal affiliation, not merely Indian ancestry."].) Even if further inquiry was required, we would find the error harmless for the same reasons discussed below.

### *Prejudicial Error*

The standard for assessing prejudice arising from an ICWA error is relatively straight forward despite the different approaches that have been recently employed regarding deficiencies in the duty of initial inquiry. (See *In re A.C.* (2022) 75 Cal.App.5th 1009, 1011 [deficient initial inquiry mandates reversal]; *In re A.C.*, *supra*, 65 Cal.App.5th 1060, 1069 [deficient initial inquiry harmless unless parent proffers Indian ancestry on appeal]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*) [deficient initial inquiry harmless unless record indicates there was readily obtainable information likely to bear meaningfully upon whether the child is an Indian child]; *In re Dezi C.* (2022) 79 Cal.App.5th 769 (*Dezi C.*) [deficient initial inquiry harmless unless record contains information suggesting a reason to believe that the child may be an "Indian child" within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding].)

To establish prejudicial error, we must find it reasonably probable that an interview of the maternal grandfather regarding potential Indian ancestry of the child would yield a different result in the juvenile court's ICWA determination. (See, e.g., *In re I.W.* (2009) 180 Cal.App.4th 1517, 1531 [no prejudicial error where "mother does

not suggest how the supposed deficiencies she notes would have made a difference given the information that was in the notices"]; *In re Charlotte V.* (2016) 6 Cal.App.5th 51, 58 [no prejudicial error from department's failure to gather additional information from family members]; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 654 [prejudicial error found where reviewing court "[could not say] with any degree of confidence that additional information concerning [a] relative … would not have altered the tribe's evaluation"]; *In re E.H.* (2018) 26 Cal.App.5th 1058, 1074−1075 [finding prejudicial error for agency's failure to ask great-grandmother about her father, who was a possible source of Indian heritage].)

" '[A] "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) Accordingly, we must assess the effect of the error we have identified to see if it is reasonably probable the juvenile court's ICWA finding would have been different absent the error.

First, we acknowledge that some courts have concluded an agency's deficient inquiry is generally prejudicial when the record is inadequate because of the agency's failure to document its inquiries. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 708; see also *In re N.G.* (2018) 27 Cal.App.5th 474, 483 (*N.G.*).)

In *K.R.*, the court of appeal concluded there was prejudicial error because the social services agency had not provided a record of its efforts undertaken to comply with ICWA. There was no evidence the agency had contacted the paternal aunt, paternal grandparents, or paternal great-grandmother, even though there was contact information available for them. The appellate court remanded the matter for further inquiry because, unlike in the instant case, the record indicated that the paternal aunt, paternal grandparents, and paternal great-grandmother would likely provide additional information that would assist in determining whether the children had Indian ancestry. (*In re K.R.*, *supra*, 20 Cal.App.5th at pp. 707−708.)

In *N.G.*, the appellate court reversed an order terminating parental rights and remanded the case for compliance with ICWA. In that case, mother successfully challenged the juvenile court's determination that ICWA did not apply. Father had filed an ICWA-020 form indicating he might have Blackfeet or Navajo ancestry, ICWA notices were sent out early in the proceedings, and after reviewing responses from the tribes, the court found ICWA did not apply. Later in the proceedings, father told a social worker he had been in contact with paternal cousins who were registered members of the Cherokee tribe. Father died shortly thereafter, and there was no evidence the agency attempted to identify or interview paternal lineal ancestors. The agency was only in contact with mother twice, and there was no evidence the agency asked mother to complete the ICWA-020 form or asked mother or any maternal relatives whether *N.G.* may have any maternal Indian ancestry. (*N.G.*, *supra*, 27 Cal.App.5th at pp. 478–479.)

The appellate court in *N.G.* ultimately found conditional reversal was required because, among other things, the record failed to show the department fully investigated the minor's paternal lineal ancestry after the father reported possible Blackfeet, Navajo or Cherokee ancestry. (*N.G.*, *supra*, 27 Cal.App.5th at pp. 481–482.) In noting its departure from established case law requiring appellant to demonstrate prejudicial error, the court of appeal reasoned, "in a case such as this one, where the record does not show what, if any, efforts the agency made to discharge its duty of inquiry [citations], and the record also does not show that all required ICWA notices were given or that the ICWA notices that were given included all known identifying information, the burden of making an adequate record demonstrating the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements must fall squarely and affirmatively on the court and the agency. In the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply. Instead, as a

13.

general rule, we will find the appellant's claims of ICWA error prejudicial and reversible." (*N.G.*, *supra*, 27 Cal.App.5th at p. 484.)

The courts in *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435−436 (*Antonio R.*), and *In re H.V.* (2022) 75 Cal.App.5th 433, 438, adopted similar standards in relation to the initial inquiry, holding that the agency's failure to interview extended family members during its initial ICWA inquiry was prejudicial error and therefore either (1) reversible per se (*H.V.*), or (2) above such a low bar for prejudice that it was reversible in most circumstances (*Antonio R.*). We decline to adopt a position that reversal is always warranted where an initial inquiry was inadequate. A "rule establishing automatic reversal without any reason to believe Native American heritage exists would potentially reward parental gamesmanship and undermine the policy favoring prompt resolution of juvenile dependency cases. It also potentially runs afoul of the constitutional requirement that judgments can only be reversed on appeal in cases where a manifest miscarriage of justice has been shown." (*In re A.R.* (2022) 77 Cal.App.5th 197, 206.)

"[I]n the dependency context, automatic reversal for errors that do not invariably lead to fundamental unfairness would exact a particularly steep cost.… And we have repeatedly underscored the need to avoid delay in this context. (See, e.g., *In re Sade C.* (1996) 13 Cal.4th 952, 993 … [noting "the pointed and concrete harm that the child may suffer" from prolonged proceedings]; *In re Marilyn H.* (1993) 5 Cal.4th 295, 306 … [children have a "compelling right[] … to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child"].)" (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1081.) "There are serious costs if courts delay finalizing permanency for a child in every case where extended family was not questioned, on the remote chance those relatives might have information which is inconsistent with the parents' disclaimer of Indian ancestry." (*In re M.M.* (2022) 81 Cal.App.5th 61, 71.)

14.

More recently, the court in *In re Rylei S.* (2022) 81 Cal.App.5th 309, further clarified that "all that is necessary" is for an agency to make a "genuine effort to investigate the child's Indian status by complying in good faith with the mandate of section 224.2, subdivisions (b) and (e)." It required remand for a proper inquiry where the agency's failure to conduct an adequate inquiry "makes it impossible for the parent to show prejudice." (*In re Rylei S.*, at p. 324.) We find our decision in *In re J.N.* (2006) 138 Cal.App.4th 450, to be relevant and clarifying in cases where there is a complete lack of inquiry. In *J.N.*, the parent was never asked whether she had any Indian ancestry and the record contained no information to that effect. (*Id.*, at p. 461 & fn. 6.) In those circumstances, we rejected harmless error analysis, "refus[ing] to speculate" about what the parent's response to an inquiry might be. (*Id.* at p. 461.) That conclusion is consistent with our Constitution's requirement that a judgment not be "set aside" unless it "has resulted in a miscarriage of justice" because there still exists a reasonable chance that a parent would claim Indian ancestry where an inquiry of their side of the child's family is completely lacking in the record. (Cal. Const., art. VI, § 13.)

In the instant case, the agency did provide a record of its good faith efforts to comply with its duty of inquiry by a formal declaration and notice to a tribe. The juvenile court and agency directly inquired of mother and requested that she obtain additional information from family members. Mother provided the agency with the additional information that she needed to obtain, and the agency provided that information to the BIA and a tribe. The tribe made a determination that the child was not eligible for membership in the tribe without requesting additional information.

We agree that the agency's efforts in the instant case were imperfect, given our finding of error from the absence of direct contact between the agency and the maternal grandfather, but the failure to complete a portion of the required inquiry cannot be equated with an agency's complete failure to conduct an inquiry in good faith. Otherwise, the prejudice analysis would be indistinguishable from the analysis of error.

15.

For these reasons we do not find that the agency failed to conduct its inquiry in good faith or completely failed in its duty of inquiry such that prejudicial error has been demonstrated.

Next, there is another line of cases that conclude reversal is not warranted where the appellant failed to establish a miscarriage of justice by making an offer of proof or other affirmative assertion of Indian ancestry on appeal. (See, e.g., *In re A.C.*, *supra*, 65 Cal.App.5th 1060, 1069; *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388; *In re N.E.* (2008) 160 Cal.App.4th 766, 770; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431.) These cases hold that "[i]n the absence of such a representation, the matter amounts to nothing more than trifling with the courts. [Citation.] The knowledge of any Indian connection is a matter wholly within the appealing parent's knowledge and disclosure is a matter entirely within the parent's present control. The ICWA is not a 'get out of jail free' card dealt to parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. Parents cannot spring the matter for the first time on appeal without at least showing their hands." (*In re Rebecca R.*, *supra*, 143 Cal.App.4th at p. 1431.) We acknowledge that mother has not demonstrated prejudice in this way, but we decline to rely on this reasoning alone in affirming the juvenile court's ICWA finding.

Several appellate courts have held that reversal is warranted when an error in inquiry is prejudicial when the record indicates there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th 735; *In re A.C.*, *supra*, 75 Cal.App.5th 1009, 1017 [applying the *Benjamin M.* court's standard for prejudice]; *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [same].) In *Benjamin M.*, one parent was not available to report or deny Indian heritage, and the agency never inquired of any of the missing parent's available relatives. (*Benjamin M.*, at pp. 744–745.) The appellate court conditionally

reversed to permit the agency to inquire with the father's brother, who was accessible to the agency.

The appellate court reasoned that a parent "cannot always easily obtain the missing information" and the "right at issue in the ICWA context is as much an *Indian tribe's* right to 'a determination' of a child's Indian status as it is a right of any sort of favorable outcome for the litigants already in a dependency case." (*Benjamin M.*, *supra*, 70 Cal.App.5th, at p. 743.) While citing to the decisions from *N.G.*, *K.R.*, and *J.N.*, it explained that the harmlessness inquiry should be focused on whether the error would uncover "meaningful proof relevant to the determination, whatever the outcome will be" rather than "proof of an actual outcome (that the parent may actually have Indian heritage)." (*Benjamin M.*, at pp. 743–744.) With information about ancestry on the father's side "missing," inquiry with a person sharing the father's ancestry "would likely have shed meaningful light on whether there [wa]s reason to believe Benjamin [wa]s an Indian child." (*Id.* at p. 744.) Under this approach, continued inquiry is required "where the probability of obtaining meaningful information is reasonable in the context of ICWA." (*Ibid.*)

The court in *Dezi C.* recently took yet another approach, concluding initial inquiry errors require reversal where a reviewing court would have "reason to believe" further inquiry might lead to a different result. (*Dezi C.*, *supra*, 79 Cal.App.5th 769, 779.) The appellate court illustrated an example of its rule as follows: "a reviewing court would have 'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information; if the record indicates that the agency never inquired into one of the two parents' heritage *at all* (e.g., *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740); or if the record indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed (e.g., [*In re A.C.*], *supra*, 75 Cal.App.5th at pp. 1015–1016)." (*Ibid.*)

17.

The *Dezi C.* court was critical of *Benjamin M.*, based upon its reasonable conclusion that *Benjamin M.*'s holding was being applied with too much focus on the "ease of obtaining information." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 785.) It rejected mother's argument that the agency had "readily obtainable information … likely to bear meaningfully upon whether [Dezi and Joshua]" were Indian children because the [d]epartment could have easily interviewed mother's and father's relatives about the children's Indian heritage when they questioned them on other topics." (*Id*. at p. 786.) We believe *Dezi C.*'s criticism of *Benjamin M.* is more appropriately placed on the cases adopting its rule with too narrowed of a focus on information being "readily obtainable." (See *Antonio R.*, *supra*, 76 Cal.App.5th at p. 431; *In re J.C.* (2022) 77 Cal.App.5th 70, 81.)

Whether information is "readily obtainable" is only one aspect of the *Benjamin M.* analysis, and this will generally be determined when analyzing the adequacy of the agency's inquiry. If the information allegedly possessed by a relative was not readily obtainable by the agency, then the failure to obtain that information would be unlikely to render the agency's inquiry inadequate. The agency's ease of obtaining information from a relative is most relevant to our initial determination of the existence of error. Where a relative is not available to the agency such that information is not "readily obtainable," there would be no basis to find the agency failed to comply with its duty in the first place. (See *Antonio R.*, *supra*, 76 Cal.App.5th at p. 431 [inadequate inquiry where the agency failed to inquire of known and available extended family members]; *In re J.W.* (2022) 81 Cal.App.5th 384 [error in initial inquiry for failure to ask extended family members about their Indian ancestry despite the agency having contact with those family members].)

The *Dezi C.* court attempts to distinguish its "reason to believe" rule from the *Benjamin M.* approach because it focuses on "whether it is reasonably probable that an agency's error in not conducting a proper initial inquiry affected the correctness (that is, the outcome) of the juvenile court's ICWA finding." (*Dezi C.*, *supra*, 79 Cal.App.5th at

p. 781.) The *Dezi C.* court stated its approach was most similar to the *Benjamin M.* approach, but it expressed concerns that *Benjamin M.* was not outcome focused enough and could be too easily applied by other courts as an automatic reversal rule. (*Dezi C.*, at pp. 785–786.) However, we believe the critical analysis in the *Benjamin M.* approach is sufficiently outcome focused because it determines whether the missing information bears meaningfully on the inquiry into a child's ancestry. We would reject *Dezi C.* to the extent that it can be interpreted as requiring actual proof that Indian ancestry would be revealed by further inquiry because it is only necessary that appellant demonstrate a reasonable probability that Indian ancestry would be revealed.

Information can only "bear meaningfully" on a child's Indian status where there is a reasonable probability that obtaining the information would impact the result of the juvenile court's ICWA determination. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744 [continued inquiry required where the "probability of obtaining meaningful information is reasonable"].) The fact that a relative is likely to have general knowledge about a parent's ancestry does not mean that obtaining such information will result in the discovery of information that was both "missing" and "meaningful" such that the juvenile court's ICWA determination would have been affected. There must exist a reasonable chance that interviewing an available relative would lead to "meaningful" information. Remand for conducting inquiries of relatives where there exists only speculation that they possess information that is relevant to the inquiry would be an empty formality, a waste of judicial resources, and detrimental to the children's interests in stability. (*Rebecca R.*, *supra*, 143 Cal.App.4th at p. 1431 ["Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way."].)

We also recognize the difficulty in assessing the effect that obtaining potentially unknown information would have on the juvenile court's ICWA finding. That is why a

19.

flexible, case-by-case approach is most appropriate in this context because there are a number of circumstances that can potentially undermine the juvenile court's ICWA determination. A few of those circumstances are specifically acknowledged by the court in *Dezi C.*, such as where the agency fails to follow up on a parent's claim of possible Indian ancestry; an inquiry into the ancestry of one of the child's parents has been completely omitted despite the availability of either the parent or one of their relatives (e.g., *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740); or a parent's self-reporting of "no Indian ancestry" is not fully informed because they are adopted and estranged from their family (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.). Although the actual effect of obtaining the information is unknown in these circumstances, there exists a reasonable chance that Indian ancestry will be disclosed upon further inquiry such that the information is meaningful.

The requirement that an appellant demonstrate that the information missing as a result of the inadequate inquiry is meaningful to the determination of the child's Indian status serves both the interests of Indian tribes and dependent children awaiting adoption. Such a limit on conditional reversals promotes the child's interest in avoiding the delay and instability that results from orders for additional inquiry "without any showing whatsoever that the interests protected by the ICWA are implicated in any way." (*In re Rebecca R.*, *supra*, 143 Cal.App.4th 1426, 1431.) The interests of Indian tribes are also recognized in that a parent's potential lack of knowledge regarding their Indian ancestry will be appropriately considered because a parent's equivocal response can be properly weighed against any other meaningful information that may be available to the agency.

However, once a parent unequivocally denies having Indian ancestry, the reasonable chance that a relative has information that would affect the outcome of the inquiry becomes substantially diminished absent evidence that they were estranged from their family since childhood. (*In re Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1015 ["Each of the parents unequivocally denied Indian ancestry, and mother has not identified any

20.

evidence in the record that would support an inference that she or the children's fathers might unknowingly be members of an Indian tribe."]; (*In re J.W.*, *supra*, 81 Cal.App.5th 384 ["[m]other was raised by her biological family with whom she had remained in contact, and the record does not otherwise suggest that [m]other's denial of Indian heritage is ill informed, unfounded, or incorrect"]; *In re M.M.*, *supra*, 81 Cal.App.5th 61 ["There is nothing in the record indicating mother and father might have been unaware of having Indian ancestry. We therefore reject mother's 'unvarnished contention that additional interviews of [relatives] would have meaningfully elucidated the children's Indian ancestry.' "]; *In re G.A.* (2022) 81 Cal.App.5th 355 ["Agency had no evidence whatsoever of a tribal link. Mother never claimed Indian ancestry. There is no evidence she was adopted and thus unaware of her biological relatives."].)

In sum, the crucial question to resolve for prejudicial error resulting from an agency's inadequate initial inquiry is whether the completion of the missing portion of the inquiry would have affected the juvenile court's determination on the applicability of ICWA. When properly applied, the rules of *Benjamin M.* and *Dezi C.* are consistent with our Constitution's requirement that no judgment should be set aside unless "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) Each case requires reversal only where it is reasonably probable that the absence of available and meaningful information affected the correctness of the juvenile court's ICWA determination. (*Benjamin M.*, *supra*, 70 Cal. App. 5th at p. 744 [continued inquiry required where the "probability of obtaining meaningful information is reasonable"]; *Dezi C.*, *supra*, 79 Cal.App.5th at p. 782 [further inquiry required where the record gives the appellate court a reason to believe further inquiry on remand "may undermine the juvenile court's ICWA finding"].)

In the present case, mother informed the juvenile court that she needed to speak with her father to obtain the missing information it was requesting regarding her

21.

unknown Indian ancestry. Subsequently, the agency received information from the mother, and we can reasonably infer that she received this information from the maternal grandfather. However, there is still a reasonable chance that the outcome of the initial inquiry would have been different because the social worker would have been able to obtain all of the relevant biographical information from the maternal grandfather, such as his date of birth, in a direct interview. The record is also unclear as to the whereabouts of the maternal great-grandfather, and a direct interview with his son, the maternal grandfather, would have provided information "meaningfully bearing" on whether the child had Indian ancestry through the maternal family.

Accordingly, we conclude that the juvenile court's finding that ICWA was not applicable to the child is not supported by substantial evidence. Under any of the lines of cases requiring an appellant to affirmatively demonstrate prejudice, we would conclude that the juvenile court's error was prejudicial. The juvenile court, at a minimum, should have ensured that the agency attempted to contact the child's maternal grandfather regarding mother's possible Indian ancestry. The child's maternal grandfather was the son of the maternal great-grandfather, whom mother claimed her Indian ancestry from. (See e.g., *In re E.H.* (2018) 26 Cal.App.5th 1058, 1074−1075 [finding prejudicial error for agency's failure to ask great-grandmother about her father, who was a possible source of American Indian heritage].)

The maternal grandfather was readily available to the agency for contact by mail since his address was listed in the notice to the tribe. The agency should have made a meaningful effort to contact the maternal grandfather and attempted to gather the necessary information to assist them in determining whether there was a reason to believe the child was an Indian child. The agency's omission of the maternal grandfather's date of birth in the family information provided to the tribes may have also impacted the tribe's ability to conduct their own inquiry into the maternal great-grandfather's possible ancestry. (See *In re Breanna S.* (2017) 8 Cal.App.5th 636, 654 [prejudicial error found

22.

where reviewing court "[could not say] with any degree of confidence that additional information concerning [the child of a relative identified as Indian] … would not have altered the tribe's evaluation"].) These omissions lead us to conclude that the juvenile court's finding that the ICWA did not apply was not supported by substantial evidence and limited remand is required.

## DISPOSITION

The finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to comply with the inquiry provisions set forth in section 224.2.

If, after the court finds adequate inquiry has been made consistent with the reasoning in this opinion, the court finds ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court finds ICWA does not apply, the finding that ICWA does not apply to the case shall be reinstated.

In all other respects, the court's orders terminating parental rights are affirmed.